WOOD v. VILLAGE OF ROCKWOOD.

1. Municipal Corporations—Sewer Special Assessment District—Bonds—Judgment.

Under judgment for holder of bonds issued by a village against a sewer special assessment district, construed as having recovery thereunder limited to the district, the judgment was not a binding obligation of the village at large.

2. Same—Sewer Special Assessment District—Reassessment to Pay Bondholder's Judgment.

In mandamus proceeding by holder of bonds issued by village against a sewer special assessment district, the original assessment on which would have been sufficient to pay the bonds if collected as levied, which bondholder had obtained a judgment for the unpaid balance of principal and interest, circuit court is directed on remand to order a reassessment and defendant village to comply, opportunity being afforded to individual property owners who paid their original assessment in full to have their rights, as compared with others who took advantage of an instalment plan and State moratoriums on penalties and interest, determined upon becoming parties hereto, and for a determination of the amount to be reassessed for payment of bonds and interest without regard to amount of judgment and property within the district to be held liable therefor, property which since was sold at so-called scavenger

sale not being subject to reassessment and loss in special assessment resulting from such sale not being reassessable on balance of property within the district (1 Comp. Laws 1929, §§ 1624, 1786; Act No. 126, Pub. Acts 1933, as amended by Act No. 28, Pub. Acts 1937; Act No. 50, Pub. Acts 1939; Rockwood village charter, chap. 11, §§ 28, 40).

3. Costs—Public Question—Mandamus—Reassessment of Sewer Special Assessment District.

No costs are allowed in mandamus proceeding to compel village to reassess sewer special assessment district for unpaid balance of judgment obtained by bondholder, a public question being involved.

Butzel, Bushnell, and Reid, JJ., dissenting.

Appeal from Wayne; Webster (Arthur), J. Submitted March 19, 1945. (Calendar No. 42,870.) Decided May 14, 1945.

Petition by Albert F. Wood for a writ of mandamus to compel the Village of Rockwood and its officers to reassess property for purpose of paying a judgment. Petition dismissed. Plaintiff appeals. Reversed and remanded for determination of amount and issuance of writ.

*Fildew & DeGree,* for plaintiff.

*Ernest O. Zirkalos* and *A. P. Zirkaloso,* for defendants.

Boyles, J.  Upon leave granted, plaintiff appeals from an order of the circuit court for Wayne county denying plaintiff's petition for writ of mandamus to compel defendant village of Rockwood to levy and spread an additional assessment against the lots in sewer special assessment district No. 1 of said village.

On November 1, 1929, the village of Rockwood issued sewer bonds against said sewer special assess-

ment district in the amount of $35,000. The bonds provide that the village of Rockwood will pay to the bearer from the proceeds of the collection of special assessments levied in sewer special assessment district No. 1 the face value of the bonds, with interest thereon at 6 per cent. until paid. In 1929 a special assessment of $35,000 was levied against the 248 lots in this special assessment district, payable in 5 annual instalments.

In 1933 the legislature by Act No. 126, Pub. Acts 1933 (Comp. Laws Supp. 1933, § 3551-4 *et seq.,* Stat. Ann. § 7.231 *et seq.*), canceled interest and penalties on special assessments for 1932 and prior years, provided the same were paid by September 1, 1935; and further provided for payment of the original special assessments in 10 annual instalments, with interest at 4 per cent. beginning September 1, 1935. By Act No. 126, § 3, Pub. Acts 1933, as amended by Act No. 28, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 3551-6, Stat. Ann. 1944 Cum. Supp. § 7.233), this cancellation of interest and penalties was extended to special assessments due in 1933, 1934 and 1935, and a collection fee of 2 per cent. was imposed. Under Act No. 50, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 3551-18, Stat. Ann. 1944 Cum. Supp. § 7.242), all interest and penalties were canceled to September 30, 1939, but with a provision for a collection fee of 6 per cent.

Only a few of the owners of the 248 lots in the special assessment district No. 1 paid the special assessments in full as originally assessed. Most of the lot owners took advantage of the aforesaid relief acts and either paid the special assessments without any interest or penalties or in reduced amount. However, the interest on the outstanding sewer bonds continued to run from November 1, 1929, at the rate of 6 per cent. per annum. The cancellation of interest on the special assessments

caused a substantial deficit in the funds out of which the bonds and interest were to be paid. Much of the default in payment of the bonds results from the taxpayers paying their taxes on a reduced basis under the relief acts above referred to. A part of the default in the payment of the bonds results from the State foreclosing the tax lien against 92 of the lots, against which there were special assessments amounting to $6,971.32 at the time the title of the State became absolute. After the 92 lots were sold at scavenger sale the State returned to the village its share of the proceeds from such sales, amounting to $3,893.80, resulting in a loss of $3,077.50 in the special assessments against said 92 lots.

The assessments that were collected and paid over to the bondholder reduced the unpaid bonds to approximately $20,000. The bonds first went into default in 1931. On October 23, 1939, plaintiff as the holder of all the unpaid and outstanding bonds obtained a judgment in circuit court against the village of Rockwood for $21,088.81. Subsequent payments made to plaintiff out of collections of special assessments have reduced the amount to approximately $15,000.

At the time the judgment was entered plaintiff stipulated that for the collection of the judgment he would look only to special assessment district No. 1 and not to the village at large. The judgment and the said stipulation are not in the record before us but it is conceded that a motion for new trial was denied on the basis of such stipulation. Without approval of such informal procedure to add a party or to modify or amend a judgment, we base decision on the concession now made by plaintiff that:

"At the time the judgment was entered, counsel for plaintiff stipulated that plaintiff, for the collec-

tion of the judgment, would look only to the special assessment district No. 1 and not to the village as a whole.''

That the present case is not an attempt to enforce collection of a judgment against the village at large is further shown by plaintiff's admission as follows:

''The judgment entered properly limited recovery to collection of taxes from the special sewer assessment district No. 1;''

And the purport and purpose of plaintiff's present action is stated by counsel as follows:

''Plaintiff seeks a writ of mandamus to compel the village of Rockwood to reassess the lots in special assessment district No. 1 in an amount sufficient to pay the balance due on said judgment.''

The purport of the present action is further shown by the statement by plaintiff in concluding his brief:

''We request that the petition of the plaintiff for a writ of mandamus be granted requiring the defendant village of Rockwood to reassess the 156 lots in the special assessment district No. 1, title to which has never been foreclosed by the State for taxes, in an amount sufficient to pay the balance due on plaintiff's judgment.''

We accept plaintiff's viewpoint and conclude that the issue before us is whether mandamus should issue to compel defendants to reassess the deficiency against 156 lots in the special assessment district. However, as will be later pointed out, decision cannot be based on the judgment obtained by plaintiff against the village at large. In effect, the stipulation of the village that it would look only to the special assessment district was an attempt to have

the judgment considered as one against the special assessment district instead of against the village at large. The village could not legally consent to a judgment against the assessment district, and plaintiff's claim that the judgment is conclusive of plaintiff's rights is without merit. *City of Highland Park* v. *Oakland County Drain Commissioner,* 300 Mich. 501.

On May 17, 1940, plaintiff started the present proceeding in mandamus in the Wayne county circuit court to compel the village of Rockwood and its official representatives "to forthwith adopt the necessary and proper resolutions authorizing the proper officials to levy additional special assessments of sufficient amount to pay relator's judgment against the village of Rockwood."

The defendants answered and, after nearly two years of lack of progress, the case was finally heard by the court and an order was entered denying plaintiff any relief.

The title to 92 of the 248 lots in special assessment district No. 1 became absolute in the State by purchase on sale for nonpayment of taxes. When these 92 lots were sold by the State at scavenger sales and returned to private ownership, the State paid over to the village of Rockwood its share of the proceeds from such sales, and nearly all of these proceeds have now been paid over to plaintiff. These 92 lots are no longer liable for the special assessment and cannot now be reassessed to pay any part of the deficiency in the special assessment district funds. *Keefe* v. *Oakland County Drain Commissioner,* 306 Mich. 503. In the situation now before us, this results in a net reduction or loss in the sum of $3,077.50 in special assessments, that being the amount of the special assessments against said 92 lots over and above the village share of the

proceeds from scavenger sales which were turned over to the village by the State. This loss cannot be made up by reassessing it against the remaining lots in the district. *Municipal Investors Association* v. *City of Birmingham,* 298 Mich. 314 (affirmed by opinion, *Municipal Investors Assn.* v. *Birmingham,* 316 U. S. 153 [62 Sup. Ct. 975, 86 L. Ed. 1341]); *Keefe* v. *Oakland County Drain Commissioner, supra.*

The controlling question is whether the unpaid balance on plaintiff's bonds can be reassessed against the remaining lots in the assessment district which may be found liable for reassessment, after deducting the $3,077.50 lost from reassessment when the 92 lots became State property. Besides the loss in revenue from special assessments canceled on the 92 lots above referred to, there was a further loss in such revenues through cancellation or waiver of interest and penalties on special assessments, and extensions of time for payment, by the three legislative acts hereinbefore cited and referred to. Most of the lot owners in the district took advantage of these relief acts and either paid the special assessments without any interest or penalties or in reduced amount. Some instalments had not been paid when this case was started, some taxpayers having taken advantage of the 10-year moratorium extension for annual instalment payments. The result has been a reduction in anticipated revenue. However, the interest on the unpaid bonds, dating from November 1, 1929, continued to run and accumulate at 6 per cent. per annum. Obviously the cancellation of the interest and penalties on special assessments did not change or reduce the rate of interest on the outstanding bonds or the obligation to pay the same. Under such circumstances there resulted a substantial deficiency in the special assessment district

funds out of which the bonds and interest were to be paid. There is no pending measure or proceeding whereby the village is attempting to reassess or collect, from such of the lot owners as may be liable for reassessment, the funds necessary to make up the deficiency. The instant proceeding in mandamus seeks to compel the village to take the necessary steps toward that end.

Under the circumstances we are not in accord with plaintiff's contention that it is the duty of the assessing officers of the village to assess forthwith *the amount of plaintiff's judgment* against the village property at large. Plaintiff refers to 3 Comp. Laws 1929, § 14690 (Stat. Ann. § 27.1654), which provides that whenever a judgment has been recovered against any township, village or city, a transcript of the judgment may be obtained and filed with assessing officers and the amount shall thereupon be assessed on the next tax roll. That statute does not apply to the issue now before us, nor has plaintiff adopted the procedure set up in such statute. However, we agree with plaintiff's alternative claim that mandamus is the proper remedy to compel the village to take the necessary steps toward reassessing and collecting the deficiency in the funds of the special assessment district to pay the balance due on the bonds. See *Board of Education of City of Lincoln Park* v. *Board of Education of City of Detroit*, 245 Mich. 411.

The village incorporation act (1 Comp. Laws 1929, § 1786 [Stat. Ann. § 5.1534]) specifically empowers each village by charter to provide for reassessing the cost, or any portion thereof, of any public improvement to a special district. A provision of the charter (chapter 11, § 40, par. 236) of the village of Rockwood specifically authorizes the village council to make an additional pro rata assessment on a

special assessment district to supply a deficiency when the money provided proves insufficient to pay the cost of a special assessment improvement. Furthermore, this is in accord with the village act (1 Comp. Laws 1929, § 1624 [Stat. Ann. § 5.1360]) which provides:

"Should any special assessment prove insufficient to pay for the improvement or work for which it was levied, and the expenses incident thereto, the council may, within the limitations prescribed for such assessments, make an additional pro rata assessment to supply the deficiency."

While permissive in form, the requirement to reassess has been construed by this court to be mandatory. *Corliss* v. *Village of Highland Park,* 132 Mich. 152.

While the original assessment, *if collected in full as levied,* would doubtless have been sufficient to pay the bonds, it is conceded that the funds collected in the special assessment district No. 1 are not sufficient to pay the past due and unpaid balance on the bonds. The controlling question is whether the plaintiff is entitled to the writ to compel defendants to reassess the deficiency, against those lots in the special assessment district which may be found liable for reassessment, the title to which did not pass to the State on foreclosure of liens for delinquent taxes.

This question has been before us in considering reassessment of a deficiency in a drain fund, on lands in the drain special assessment district, for payment of outstanding bonds. In *Keefe* v. *Oakland County Drain Commissioner, supra,* we held that such deficiency could be reassessed against lands in the district to which title had not been acquired by the State under delinquent tax sales, after deducting

that portion which would have been applicable to the State-acquired lands. The reasoning in the *Keefe Case* strongly impels to the same conclusion in the instant situation. We recognize that the statute providing for an additional assessment necessary to pay outstanding drain bonds makes particular reference to *payment of bonds,* while the village act now under consideration (1 Comp. Laws 1929, § 1624 [Stat. Ann. § 5.1360]) provides generally that the council may make an additional assessment where the special assessment proves insufficient "to pay for the improvement or work for which it was levied, and the expenses incident thereto." In one sense this language is broader than the phraseology of the drain law above referred to which merely provides for reassessment to pay bonds, while the village act controlling this decision broadly covers reassessment for the cost of the improvement and the expenses incident thereto. Nothing in said village statute requires a restricted construction that it is limited solely to the first cost of the improvement, excluding the retiring of bonds issued for that purpose. In this case the original assessment was in the exact amount of the cost of the improvement, but subsequent legislative enactments deprived the special assessment district of anticipated revenue presumably sufficient to retire the bonds and interest when due. In the case at bar the bonds held by plaintiff were issued and sold "to pay for the improvement or work * * * and the expenses incident thereto."

In the *Keefe Case* we said (p. 513):

"Appellants contend that, if it be held that the deficiency assessment cannot be levied against lands purchased from the State, it can, nevertheless, be levied against those lands which have not been sold for delinquent taxes and against those municipal

units against which a proportion of the original assessment had been spread at large.    *    *    *    It is only fair and reasonable that such lands and municipalities continued to bear their just proportion of the cost of improvement originally imposed.''

Were we to hold otherwise in this case, the result would be a cancellation of a considerable part of the indebtedness assumed by the special assessment district when the bonds were issued, leaving plaintiff without remedy.  The legislative enactments need not be construed to result in canceling a portion of the bond indebtedness of the special assessment district.  The bonds issued in 1929 have not been reduced in principal or interest by the remedial tax legislation passed in 1933, 1937 and 1939.  Such lots in the assessment district as are found to be liable for. the deficiency may be reassessed to make up the same.

However, the amount of the judgment does not control the amount of money for which plaintiff may have a reassessment.  It is not a judgment against the special assessment district.  It has been reduced by payments from specific taxes and penalties collected since it was entered.  The record before us indicates that there are some further small amounts in the fund, since collected, to which plaintiff is entitled.  Also, the amount of the judgment is inclusive of the amount of the special assessments on lots to which the State acquired title, which amounts cannot be reassessed.  The record does not indicate to what extent there exists unpaid valid special assessments for which payment was extended by legislative moratorium.  On remand, the court must determine the amount to be reassessed, without regard to the amount of the judgment.

The record before us does not disclose the facts on which an order could be entered in consonance with

the foregoing conclusions. We are not called upon in this case to decide the amount to be assessed against each lot, or the proportion of the reassessed taxes which shall be borne by each lot in the assessment district which may be held liable for further assessment.

The confusion in this case arises from attempting to distinguish between paying the costs of the improvement *in the first instance* out of money provided by sale of bonds, and paying for the improvement in the first instance out of special assessment money. In this case the improvement was paid for in the first instance by sale of bonds. But it is too obvious for argument that if the improvement was paid for in the first instance in full out of special assessment money, there would never be any occasion thereafter for any reassessment, although specifically provided for both in the statute and by the village charter. Furthermore, the village charter provides for special assessments to be paid in 5 annual instalments. Chapter 11, § 28 (par. 224), of the village charter authorizing special assessments provides:

"Special assessments shall be divided into five equal annual instalments."

This would preclude paying for the entire cost in the first instance solely out of *special assessment* money except by delaying the improvement until 5 instalments had been collected, or at least enough instalment money had been collected to pay the first cost in full when the improvement was made. The only alternatives would be for the village to advance the entire cost in the first instance out of its general funds, or by borrowing money either by the village or by the special assessment district, to have it on hand when the improvement was made. And if we

follow the defendants' argument to its logical con-
clusion, the improvement could never be made by
borrowing, or out of proceeds of a bond issue, inas-
much as the defendants insist that special assess-
ments cannot be levied to pay a bond issue.
Certainly no one would buy special assessment bonds
under such an absurd construction.

The fallacy of defendants' argument is made fur-
ther apparent by a reading of the charter and stat-
ute provisions on which defendants rely to defeat
plaintiff's claim for payment of his bonds. In this
case the improvement was *not* paid for in the first
instance out of money derived from special assess-
ments. In fact, there has never been enough money
*out of special assessments* to pay for the improve-
ment. Counsel for the defendants say that neither
the village charter nor the statute authorizes any
reassessment to pay bonds, and rely on chapter 11,
§ 40 (par. 236), of the village charter, and 1 Comp.
Laws 1929, § 1624 (Stat. Ann. § 5.1360). Counsel
for defendants overlook the plain language of these
statutory and charter provisions. Section 40
(par. 236), of the village charter on which counsel
for defendants rely, is a part of chapter 11 of the
village charter. This chapter is entitled "Special
assessment improvements: how made: *special as-
sessment bonds:*" Section 39 of this chapter (par.
235 of the charter) expressly authorizes the council
to issue bonds in anticipation of the collection of
special assessments, and provides that contractors
may be required to take their pay for special as-
sessment improvements in bonds to be issued in
anticipation of the collection of such assessments,
as a condition of their contract. It is plain that the
money derived from borrowing is just as much
within the category of "moneys provided in accord-
ance with the provisions of *this chapter*" as are

moneys received from taxpayers on special assessments. Bond money and taxpayers' money come equally within the provisions of the next succeeding section of this same chapter on which defendants rely. Chapter 11, § 40 (par. 236 of the charter), provides:

"When the moneys provided in accordance with the provisions of *this chapter* prove insufficient to pay the cost of the special assessment improvement for which they were provided, then the council within the limitations prescribed for special assessments, may make an additional pro rata assessment on the special assessment district to supply the deficiency."

We must conclude that "cost of the special assessment improvement" in the above section must include payment of bonds issued for the improvement, and not limited merely to the cash paid to contractors, labor or material men; otherwise no contractor would consent to take bonds in lieu of cash for his pay, as the charter provides, nor would any investor take such bonds, unless they were made the general obligation of all the taxpayers of the village, or of the village itself. Furthermore, the interest requirements of a bond issue are as much the legal obligation of the borrower as the principal itself.

We conclude that the village charter sufficiently provides for the reassessment sought by plaintiff. In addition, the applicable statute itself more plainly authorizes such reassessment in the following language:

"Should any special assessment *prove insufficient to pay for the improvement or work for which it was levied,* and the expenses incident thereto, the council may, within the limitations prescribed for

such assessments, make an additional pro rata assessment to supply the deficiency.''

It is undisputed that the special assessment in this case has proved insufficient to pay for the improvement or the work for which it was levied.

Mr. Justice BUTZEL, writing for affirmance, would concede the right to reassess under the statute above quoted, where ''because of miscalculations or extras, the original estimate of the cost of an improvement is insufficient.'' The quoted statute does not limit the right to reassess, to ''miscalculations or extras'' in ''the original estimate of the cost.'' On the contrary, the statute broadly declares that the reassessment may be made ''should *any special assessment*'' prove insufficient to pay for the improvement.

We are not here concerned with questions between individual owners of lots which may arise on the reassessment. The rights of owners of lots who paid their original assessment in full when the first instalment became due, as compared with the rights of others who took advantage of the 5-year instalment plan, or who took advantage of the State moratoriums on penalties and interest on special assessments, need not be commented on in this case. These individual owners are not parties in this case and their *individual* rights cannot be adjudicated herein. Nor can such rights be adjudicated in the court below on the remand, while they are not parties in that court. The circuit court will order a reassessment, the village authorities will comply, and the rights of any individual owner will be open to adjudication if or when such owner may be a party litigant.

The order denying the petition for mandamus is set aside and the case remanded to determine the

amount to be reassessed, and the property within the special assessment district to be held liable for reassessment in accordance herewith. The circuit court is directed to issue the writ of mandamus to compel the village authorities to reassess accordingly. No costs allowed, this being a matter in which the public interest is involved.

STARR, C. J., and NORTH and SHARPE, JJ., concurred with BOYLES, J. WIEST, J., concurred in the result.

BUTZEL, J. (*dissenting*). The order of the trial court denying mandamus should be affirmed. The facts in the case are set forth in the opinion of Mr. Justice BOYLES. I fully agree with him in holding that the judgment against the Village of Rockwood, as limited in its recovery, is in no way binding upon defendants. However, I find no statutory power whatsoever to levy an assessment to pay for the past-due and accumulated interest on the bonds that were issued to pay in full the cost of the sewer. Had the bonds been issued under the particular provisions of the drain law, there would have been authority to levy an additional assessment, for section 4940, 1 Comp. Laws 1929 (Stat. Ann. § 11.104) makes a provision for interest. On the other hand, neither the statute nor the village charter makes any provision for reassessments or additional assessments to pay interest that might thereafter become due on bonds when the cost of the construction or the improvement (not a drain) was fully covered by the original assessment.

Chapter 11, § 40 (par. 236), of the village charter provides as follows:

"When the moneys provided in accordance with the provisions of this chapter prove insufficient to

pay the costs of the special assessment improvement for which they were provided, the council within the limitations prescribed for special assessments, may make an additional pro rata assessment on the special assessment district to supply the deficiency. Such additional special assessment shall be made in the same manner as the original assessment and shall be made in such number of instalments as the council may deem advisable, such number of instalments not to exceed the number of instalments of the original assessment outstanding and not yet due, which additional special assessment shall be paid in the same manner as the instalments of the original assessments.''

This follows provisions of section 1624, 1 Comp. Laws 1929 (Stat. Ann. § 5.1360), which provides:

''Should any special assessment prove insufficient to pay for the improvement or work for which it was levied, and the expenses incident thereto, the council may, within the limitations prescribed for such assessments, make an additional pro rata assessment to supply the deficiency; and in case a larger amount shall have been collected than was necessary the excess shall be refunded ratably to those by whom it was paid.''

We cannot read additional provisions into either the statute or the charter. It becomes unnecessary to discuss the other grounds for denying the writ.

Several questions raised in the opinion for reversal require an answer. Frequently because of miscalculations or extras, the original estimate of the cost of an improvement is insufficient. An additional assessment to pay such cost is provided for by statute. 1 Comp. Laws 1929, § 1624. There is no authority to levy an additional assessment years after the last instalment of the original assessment became due in order to pay interest many years in

default. That is not the cost of an improvement, which was fully paid years prior to the bringing of the present proceeding.

The record does not indicate that investors would not have bought the bonds at the time of the issue, had they known that an extra assessment for unpaid interest could not be levied many years later. The record does show that the bonds were payable from assessments on properties at their value in 1929 just before the depression was fully under way; that as municipal bonds they were tax exempt; that they were payable in five annual instalments; that they bore interest at the rate of 6 per cent. per annum until due, and at a much higher rate thereafter; that they were issued long before there were any tax relief acts. The record does not show whether or not defaults in bonds of similar character were rare. We mention, without passing on, the following question in the event of reversal of the lower court. Should owners, purchasers, or mortgagees of lots on which the principal and interest as provided by law had been paid in full as shown by the public record be now called upon to pay an additional assessment, and if not, why should others who had not paid all of the interest be obliged to pay such additional assessment?

The order of the trial court denying the petition for writ of mandamus should be affirmed, but without costs, as a public question is involved.

BUSHNELL and REID, JJ., concurred with BUTZEL, J.