WOOD v. VILLAGE OF ROCKWOOD.

1. JUDGMENT—REMAND—INTERVENTION.
    Adjudication of rights of individual lot owners who had intervened upon remand of reassessment proceeding as to special assessment district is had, notwithstanding such adjudication was not permissible upon original appeal at which time they were not parties.

2. TAXATION—RULE OF UNIFORMITY—SPECIAL ASSESSMENTS.
    The rule of uniformity of taxation provided for in the State Constitution is not strictly applicable to assessments for local improvements (Const 1908, art 10, § 3).

3. MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENTS—UNIFORMITY—LACK OF PLAN.
    An assessment for a local improvement cannot be sustained where it lacks uniformity and equality and fails as a plan of levy according to benefits.

4. SAME—SPECIAL ASSESSMENTS—PLAN OF DISTRIBUTING BURDEN.
    A tax or special assessment must be levied in accordance with some definite plan designed to bring about a just distribution of the burden.

REFERENCES FOR POINTS IN HEADNOTES
[2, 3] 48 Am Jur, Special or Local Assessments, § 58.
[4] 48 Am Jur, Special or Local Assessments, § 57.
[5] 48 Am Jur, Special or Local Assessments, § 150.
[6] 48 Am Jur, Special or Local Assessments, § 16.
[8] 14 Am Jur, Costs, §§ 23, 91.

**5. Same—Special Assessments—Reassessment for Deficiency.**
   A reassessment for a deficiency in a village special assessment district for sewers cannot be sustained, where it imposes the burden occasioned by the nonpayment of interest and penalties by certain lot owners upon other lots which had already borne their full share of the cost of the improvements in direct proportion to the benefits accruing to such lots as determined in the original assessment.

**6. Constitutional Law—Special Assessments—Deficiency—Reassessment—Cancellation—Impairment of Contracts.**
   The discharge from liability for reassessment for deficiency in special assessment district by a moratorium act as to delinquent taxes does not render such act constitutionally defective as working an impairment of the obligation of contract of purchasers of obligations of the district (CL 1948, § 211.351 *et seq.*).

**7. Municipal Corporations—Special Assessments—Reassessment for Deficiency—Cancellation of Interest and Penalties.**
   A reassessment for deficiency in a village special assessment district for sewers upon lots for which special assessments were paid pursuant to moratorium statute cancelling interest and penalties may not include an amount for such cancelled interest and penalties, since to do so would constitute an unauthorized reimposition of such interest and penalties on such lots (CL 1948, § 211.301 *et seq.*).

**8. Costs—Public Question—Reassessment.**
   No costs are allowed in mandamus proceeding to compel reassessment for deficiency in special assessment district arising from statutory cancellation of penalties and interest, a public question being involved.

Appeal from Wayne; Webster (Arthur), J. Submitted June 9, 1950. (Docket No. 57, Calendar No. 44,814.) Decided October 2, 1950.

Mandamus by Albert F. Wood to compel Village of Rockwood to reassess property for purpose of paying judgment. New York Central Railroad Company, George S. Wright and Cecil Navarre, intervene as parties defendant. Writ denied as to reassessment. Defendant ordered to pay balance on hand to plaintiff. Plaintiff appeals. Affirmed.

*Fildew, DeGree & Fleming,* for plaintiff.

*Arthur P. Zirkaloso,* for defendants village and Navarre.

*George H. Wyatt (John J. Danhof,* of counsel), for defendant New York Central Railroad Company.

Dethmers, J.    This is an appeal from an order entered by the trial court after our remand of the case in 311 Mich 381.   For factual background see this Court's opinion as there reported.   Upon remand it was stipulated that there were 277 lots in the assessment district, that 86 went through scavenger sale, that the assessments were paid in full on 113 lots as originally levied, and that the owners of the remaining 78 lots availed themselves of the benefits of the tax moratorium act (CL 1948, § 211.301 *et seq.* [Stat Ann 1950 Rev § 7.231 *et seq.*]), paying the assessments over a 10-year period without penalties and interest.   It is agreed that a portion of the deficiency for which plaintiff originally sought reassessment was occasioned by the sale of 86 lots on scavenger sale (which loss we held in 311 Mich 381 must be borne by plaintiff) and that, except for a small cash balance from collections on hand in the village treasury, the entire remainder of the deficiency, computed by plaintiff at $15,516.02, as of January 14, 1943, resulted from the cancellation of interest and penalties on the assessments against the 78 lots on which payments were made under the tax moratorium act.   It is that remainder of the deficiency which plaintiff now seeks to have reassessed.

This case was remanded not only for a determination of the amount to be reassessed, but also for a determination of "the property within the special assessment district to be held liable for reassessment."   After the holding of this Court that no re-

assessment could be made against the 86 lots sold on scavenger sale, it remained for the trial court, on remand, to determine, as directed by this Court, which, if any, of the remaining 191 lots which had not gone through scavenger sale were "to be held liable for reassessment." In its opinion this Court stated:

"We are not here concerned with questions between individual owners of lots which may arise on the reassessment. The rights of owners of lots who paid their original assessment in full when the first instalment became due, as compared with the rights of others who took advantage of the 5-year instalment plan, or who took advantage of the State moratoriums on penalties and interest on special assessments, need not be commented on in this case. These individual owners are not parties in this case and their *individual* rights cannot be adjudicated herein. Nor can such rights be adjudicated in the court below on the remand, while they are not parties in that court."

The quoted language apparently was taken as a suggestion from this Court and, in consequence, on the remand, 2 lot owners who had paid the assessments in full when due and one who had paid under the provisions of the tax moratorium statute were permitted to intervene. The situation in the case thereupon differed from what it had been when here before in the respect that after the remand there were individual lot owners parties to the case whose individual rights, in consequence, could be adjudicated.

The trial court held that the 113 lots on which the assessments had been paid in full when and as due could not be held liable for reassessment. The court's reasoning was that these lots had already borne their full proportion of the cost of the improvement as originally imposed and that to require

them to bear, in addition, the deficiency caused by payment of the assessments on other lots under the moratorium act, freed from interest and penalties, would be to violate the uniformity clause of the Constitution (Michigan Constitution of 1908, art 10, § 3), citing *Keefe* v. *Oakland County Drain Commissioner,* 306 Mich 503, 513. While it is true that the rule of uniformity of taxation provided for in the State Constitution is not strictly applicable to assessments for local improvements (see *City of Detroit* v. *Weil,* 180 Mich 593, 598, and cases therein cited) nevertheless when such assessment is not only lacking in uniformity and equality, but also fails as a plan of levy according to benefits, it cannot be sustained. *I. H. Gingrich & Sons* v. *City of Grand Rapids,* 256 Mich 661, 671. "To be valid, a tax or special assessment shall be levied in accordance with some definite plan designed to bring about a just distribution of the burden. *Thomas* v. *Gain,* 35 Mich 155 (24 Am Rep 535)." *Panfil* v. *City of Detroit,* 246 Mich 149, 156. Application of the tests laid down in these cases leads irresistibly to the conclusion that a reassessment cannot be sustained which imposes the burden occasioned by the nonpayment of interest and penalties by certain lot owners upon other lots which had already borne their full share of the cost of the improvements in direct proportion to the benefits accruing to such lots as determined in the original assessment. Analogous and in point here is the reasoning in *Keefe* v. *Oakland County Drain Commissioner, supra,* as to the impropriety of imposing the deficit occasioned by the sale of certain lots on scavenger sale upon other lots which had not gone through such sale. The trial court was correct in holding that the 113 lots on which the assessments were paid in full in the first place may not be held liable for the reassessment.

The trial court also held that the 78 lots on which the assessments were paid under the moratorium act, without interest and penalties, may not be held liable for the reassessment here sought. We are in accord with the trial court's view that, even though the moratorium act be construed to discharge these 78 lots from liability for the reassessment, the act is not, by reason thereof, constitutionally defective as working an impairment of the obligation of contract. This conclusion must follow from the reasoning in the *Keefe Case* and in *Municipal Investors Association* v. *City of Birmingham,* 298 Mich 314, in which the claim of unconstitutionality on that ground was rejected by this Court as relates to the scavenger sales act and its provisions freeing property sold thereunder from all pre-existing encumbrances (CL 1948, § 211.351 *et seq.* [Stat Ann 1950 Rev § 7.951 *et seq.*]). The reasoning of the *Keefe* and *Birmingham Cases* is likewise applicable here, not only as relates to the constitutionality of the act, but also to the effect that a holding that these 78 lots are subject to the reassessment would serve to defeat the purpose of the moratorium act which cancelled the very interest and penalties which, in effect, plaintiff seeks to have reimposed upon the selfsame lots via reassessment. Granted the constitutionality of the act, may the courts, by means of ordering the reassessment, cancel the legislative cancellation of interest and penalties? We are aware of no sanction or authority for such judicial action.

The order of the trial court directing issuance of the writ of mandamus to the defendant village requiring it to pay plaintiff the sum of $716.63, being the balance on hand in the village treasury of all collections on the original special assessment, together with interest thereon at the rate of 6 per cent. per annum from date of collection thereof by the village, but denying a writ to require the village

to reassess against any of the lots, is affirmed, without costs, a matter of public interest being involved.

BOYLES, C. J., and REID, NORTH, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.