CITY OF PLEASANT RIDGE v. TOWNSHIP OF ROYAL OAK.

1. Taxation—Scavenger Sale—Special Assessments—Reassessments.

Lands which have been sold at so-called scavenger sale are thereafter exempt from any special assessment or reassessment for unpaid balances to be reassessed against the assessment district for special assessments imposed prior to the institution of proceedings resulting in the scavenger sale (CL 1948, § 211.351 et seq.).

2. Townships—Special Assessment Districts—Guaranty.

Township in which special assessment district was located has a secondary liability as guarantor for payment of special assessment district bonds (CL 1948, § 41.413).

3. Same—Special Assessment Districts—Extent of Reassessment by Townships—Cancelled Interest and Penalties.

A township has the authority and duty to levy reassessment for special assessments against lands situate within its present territorial limits, which have not been sold at so-called scavenger sale, although such reassessment against special assessment district lands, upon which special assessments for benefits originally assessed have been paid in full, shall not include an amount for interest and penalties on assessments on other lands that were cancelled by statute, but the township's authority does not extend to territory formerly within its limits at time special assessment district was created and presently attached to a city (CL 1948, § 41.413; § 211.351 et seq.).

---

References for Points in Headnotes

[1, 3] Generally as to reassessment to pay deficiency, see 48 Am Jur, Special or Local Assessments, §§ 147, 150.

[1] Tax sale as freeing property from possibility of further assessments for benefits to land. 11 ALR2d 1133.

4. SAME—MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENT DISTRICTS —GUARANTY.

> Township and cities occupying territory formerly contained within the township share the responsibility of seeing to it that the former township territory contributes its just proportionate share toward taking care of township's secondary liability for debts incurred by special ·assessment districts located within the township before its ˙ annexation by, or formation into, cities (CL 1948, § 41.413).

5. MUNICIPAL CORPORATIONS — TOWNSHIPS — SPECIAL ASSESSMENT DISTRICTS—GUARANTY—PAYMENT FROM GENERAL FUND.

> Cities, formed from territory of a township but not from territory in special assessment districts located within the township, must make proportionate contribution in payment of township's secondary liability for special assessment district's obligations after remedies of reassessment have been exhausted, such contribution being a liability of such city at large and payable from its general fund (CL 1948, § 41.413).

6. SAME—TOWNSHIPS—SPECIAL ASSESSMENT DISTRICTS—REASSESSMENT—SCAVENGER SALE—CANCELLED INTEREST AND PENALTIES.

> Cities, formed in part from territory located within special assessment districts when they were created and incurred debts payable, but not paid, from special assessments must reassess their proportionate reassessment on such special assessment district lands within their limits which have not been sold at so-called scavenger sale, such reassessments on unscavengered lands not to include an amount for interest and penalties on assessments cancelled by moratorium statute (CL 1948, § 41.413; § 211.301 *et seq.*; § 211.351 *et seq.*).

7. TOWNSHIPS—MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENT DISTRICTS—GUARANTY—MANDAMUS.

> Township and cities which have annexed territory therefrom or been formed from territory therein and which have omitted to take imperative steps to make reassessments to take care of township's secondary liability for special assessment district bonds, issued while territory was yet township territory, are subject to mandamus to require them to proceed (CL 1948, § 41.413).

8. SAME—SPECIAL ASSESSMENT DISTRICTS—INSUFFICIENCY OF FUND —ADVANCEMENT BY TOWNSHIP BOARD—REASSESSMENT.

> Statute providing that in the event a special assessment fund in a township was insufficient to pay bonds when due that

the township board "may" advance the amount necessary to pay them and be reimbursed from such assessments when collected or from reassessment for deficiency, if necessary, is construed as making a reassessment mandatory where the fund was insufficient to pay even interest obligations (CL 1948, § 41.413).

9. Same—Special Assessment Districts—Deficiencies—Failure to Reassess—Liability of Annexing Cities.

A township's failure to reassess for deficiency in special assessment funds does not terminate the liability of cities which contain territory that was a part of special assessment districts when bonds were issued, payable from special assessments, to share proportionately in making up deficiencies (CL 1948, § 41.413).

10. Same—Special Assessment Districts—Immediate Reassessment—Hardship—Evidence.

Claim that immediate reassessment by township and cities containing territory which was a part of the township when special assessment bonds were issued, to pay overdue refunding bonds and interest would create so great a hardship upon the taxpayers that the purpose of the assessment would be defeated because of nonpayment held, unsupported under record submitted (CL 1948, § 41.413).

11. Same—Special Assessment Districts—Deficiency—Reassessment—Advancement on Guaranty.

Proceedings to obtain all possible payments by reassessment for deficiency in special assessment funds against lands within the township at time special assessment districts were created and which had not been sold at so-called scavenger sale was not barred by inability of township to make full advancement on its secondary liability for bonds issued by such districts (CL 1948, § 41.413; § 211.351 et seq.).

12. Same—Special Assessment Districts—Deficiency—Advancement from General Fund—Reassessment.

Immediate payment of proportionate shares of deficiency in special assessment funds from general funds of township and cities containing territory formerly in township when special assessment districts were created by reason of liability of general fund to pay share of such deficiency after remedies of reassessment have been exhausted was not excused by necessity of making reassessments (CL 1948, § 41.413; § 211.-351 et seq.).

13. SAME—SPECIAL ASSESSMENT DISTRICTS—UNPAID BONDS—SCAVENGER SALE—REASSESSMENT.

Unpaid bonds of special assessment districts in a township remain primarily chargeable against the lands lying within the original limits of the several assessment districts, excepting lands sold at so-called scavenger sale, where the bonds have not been outlawed, although the reassessment for the payment of such bonds is not to include an amount for interest and penalties that were cancelled by moratorium statute (CL 1948, § 41.411 *et seq.*; § 123.1 *et seq.*; § 211.301 *et seq.*; § 211.351 *et seq.*).

14. SAME—SPECIAL ASSESSMENT DISTRICTS—DEFICIENCY—REASSESSMENT.

Reassessment for deficiency of township special assessment funds is necessary where much of the original assessments remain unpaid after lapse of 22 years (CL 1948, § 41.411 *et seq.*).

15. SAME—SPECIAL ASSESSMENT DISTRICTS—SCAVENGER SALE—GUARANTY—ANNEXATION TO CITIES.

The unpaid balance of bonds issued for improvement of platted lands in a township is a debt for which the lands in the several special assessment districts are primarily liable, excepting lands as to which the State has acquired absolute title upon foreclosure of liens for delinquent taxes, with the township at large secondarily liable therefor and thereon, for the deficiency, which secondary liability is shared proportionately by such cities as have annexed or are formed from township territory since the debt was incurred, the reassessment not to include any amount represented by interest and penalties on assessments cancelled by moratorium statute (CL 1948, § 41.413; § 211.301 *et seq.*; § 211.351 *et seq.*).

16. SAME—SPECIAL ASSESSMENT DISTRICTS—DEFICIENCIES—REASSESSMENT—DETERMINATION OF AMOUNT—MUNICIPAL CORPORATIONS.

Right to reassessment for deficiencies in special assessment funds for districts located in platted lands of a township 22 years after some of the original assessments for bonds were unpaid is not precluded by lack of determination as to precise amount of total bonded indebtedness which is undisputed, or the lack of a determination of the precise amount to be borne by the several municipalities now liable, as the amounts involved are justiciable (CL 1948, § 41.411 *et seq.*).

17. MUNICIPAL CORPORATIONS—CHARTERS—SPECIAL ASSESSMENT DISTRICTS—REASSESSMENT.

Charters of 3 cities whose territory now includes land at least part of which was within special assessment district at time original bonds were issued *held,* sufficiently broad to authorize city councils to proceed with reassessment for deficiencies in special assessment funds, which reassessments together with those by township in its remaining territory were *in satisfaction of secondary liability of township as constituted when bonds were originally issued* (CL 1948, § 41.413; Hazel Park City Charter, ch 6, § 13.12; Ferndale City Charter, ch 12, § 17; Royal Oak City Charter, ch 12, § 17).

18. MANDAMUS—LACHES—SPECIAL ASSESSMENT DISTRICTS—REASSESSMENT.

Litigation involving the validity, liability and procedure concerning debt evidenced by special assessment bonds in 35 special assessment districts in defendant township and which cast great doubt, complexity and uncertainty as to the rights of the bondholders and muncipalities involved rendered inapplicable the principle of laches in mandamus proceeding to compel reassessment, since it cannot be said there was inaction and delay was less than period provided by statute of limitations (CL 1948, § 41.411 *et seq.;* § 609.13).

19. TOWNSHIPS—SPECIAL ASSESSMENT DISTRICTS—DEFICIENCY—REASSESSMENT—DURATION OF SPREAD. .

Reassessment for deficiency in township special assessment funds is permitted to be spread over 5-year period where original assessments, much of which are unpaid, were spread over 5-year period, so as to overcome barrier of constitutional limitation presently limiting amount of taxes assessable against lands subject to reassessment (Const 1908, art 10, § 21, as amended in 1948; CL 1948, § 41.411 *et seq.*).

20. SAME—MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENT DISTRICTS—DEFICIENCY—PAYMENT FROM GENERAL FUND.

Payment from general funds of cities and township of a reasonable estimate of their respective ultimate liability for special assessment bonds for special assessment districts, the lands of which have been annexed from township in which located at time districts were created, is ordered to be made as speedily as tax receipts and strict necessities of each municipality in carrying on its government will permit and without waiting for collection of special assessments as reassessed (CL 1948, § 41.411 *et seq.*).

21. SAME—MUNICIPAL CORPORATIONS—SPECIAL ASSESSMENT DISTRICTS—PROPORTION OF REASSESSMENT—ACCESS TO ORIGINAL ASSESSMENT ROLLS.

> Access to original assessment rolls of special assessment districts without waiting for township to furnish a copy thereof is granted for purpose of determining proportionate amount which the township and the cities that have annexed from, or been organized within, the township after assessment districts were created and for preparation of reassessment of lands yet subject to reassessment (CL 1948, § 41.411 *et seq.*).

22. COSTS—PUBLIC QUESTION—DEFICIENCY IN TOWNSHIP SPECIAL ASSESSMENT FUNDS.

> No costs are allowed in mandamus proceeding between municipalities for purpose of determining amount of liability of each for deficiency in special assessment funds of township, a public question being involved (CL 1948, § 41.411 *et seq.*).

Appeal from Oakland; Breakey (James R., Jr.), J., presiding. Submitted April 4, 1950. (Calendar No. 44,676.) Decided October 12, 1950. Rehearing denied December 5, 1950.

Petition by City of Pleasant Ridge and another against Township of Royal Oak and others for mandamus to compel reassessment of levy of new assessments. Arthur E. Moore intervened as party plaintiff. Judgment for defendants. Plaintiffs appeal. Reversed and writ of mandamus granted.

*Arthur E. Moore,* for plaintiffs.

*Glenn C. Gillespie* and *Franklin E. Morris,* for defendant township.

*W. C. Hudson,* for defendant City of Royal Oak.

*Orph C. Holmes,* for defendant City of Ferndale.

*Fletcher L. Renton,* for defendant City of Hazel Park.

Reid, J. This is a petition for a writ of mandamus to compel the officials of the township of Royal Oak and of the cities of Royal Oak, Ferndale and Hazel Park, which now embrace a portion of the territory formerly a part of the township of Royal Oak and having within their respective areas properties assessed for special assessments, involved in this litigation, to levy additional assessments or reassessments in the specific special assessment districts in the total approximate amount of $203,234.42. Petitioner Arthur E. Moore was permitted to intervene for and on behalf of himself as a bondholder and on behalf of all other bondholders of the special assessment districts involved in this litigation. Certain of these obligations became due and matured on October 1, 1947.

From a decree dismissing the petition, plaintiffs appeal.

Discussions in the briefs in this case center largely around 2 questions, namely: Are the defendants or any of them authorized or required to make reassessment because of unpaid bonds?; secondly, are the plaintiffs and the township of Royal Oak guilty of laches for not proceeding sooner to institute proceedings to compel such reassessment?

Commencing in the year 1926 and ending September 1, 1928, the township of Royal Oak created 35 special assessment districts under the provisions of PA 1923, No 116, as amended by PA 1925, No 263, and PA 1927, No 58, which became effective April 21, 1927 (see, as later amended, CL 1948, § 41.411 et seq. [Stat Ann 1949 Rev § 5.2411 et seq.]), for the purpose of furnishing water, sewer and street improvements.

The number, purpose, amount of assessment, and date of bonds, in each district, and the total of all the rolls, are shown in the record on exhibit No 1.

The special assessment bonds were due and payable 5 years after date, and were all sold to the public and the proceeds used to pay the costs of the improvements.

Since the creation of the special assessment districts and the levying of the special assessment taxes in the special assessment districts, 16 various portions of township territory have been annexed to cities or incorporated as cities, a total of 8 cities being involved.

The following tabulation shows the population and assessed valuation of the defendant cities which acquired portions of the special assessment districts by incorporation or annexation:

|  | Population | Assessed Valuation |
|---|---|---|
| Royal Oak | 25,087 | $33,357,500 |
| Ferndale | 22,253 | 26,199,975 |
| Hazel Park | 16,665 | 9,556,210 |

The several annexations or incorporations of township territory by defendant cities of Royal Oak, Ferndale and Hazel Park included all of some and parts of other special assessment districts, and those districts, or, the portions thereof, which are now included within the corporate limits of such cities, are no longer under the jurisdiction or control of the township of Royal Oak.

For a short period of time collections of special assessment taxes were sufficient to meet payments of interest on the bonds, but, when the first effects of the subsequent general financial depression began to be felt, collections were not sufficient to meet interest payments.

In the year 1929 and subsequent years, many of the taxes in the area involved became delinquent and as a consequence many of the special assessments were unpaid. Tax moratorium statutes were enacted by the legislature cancelling interest and penal-

ties under certain conditions and extending the period over which the taxes and special assessments could be paid. PA 1933, No 126, as amended (CL 1948, § 211.301 *et seq.* [Stat Ann 1950 Rev § 7.231 *et seq.*]).

After default of the special assessment districts in payment of their bonds one Charles F. Whitman, the owner of some of the bonds, filed a bill of complaint in the Oakland county circuit court in chancery to compel the township of Royal Oak to advance from its general fund sufficient money to pay the amounts due on the bonds. See *Whitman* v. *Township of Royal Oak*, 269 Mich 146. The *Whitman Case* determined the liability of the township generally to pay the bonded indebtedness after default. Following the decision in the *Whitman Case* the township from time to time made payments from its general fund on the bonds and interest, but it at no time had sufficient money to pay all interest and principal then due. At the time of the adoption of the refunding plan hereinafter referred to, there was barely sufficient money in the township's general fund to pay outstanding township orders.

Following the decision in the *Whitman Case,* negotiations were entered into between the township and representatives of the bondholders to obtain an extension of time to pay the indebtedness and to secure a more favorable rate of interest. An agreement was ultimately arrived at under which the time for payment of the principal was extended and the rate of interest reduced. Upon consummation of the plan all prior special assessment bonds were surrendered to the township by the former bondholders in direct exchange for the refunding bonds. None of the refunding bonds were sold to any new purchasers.

No tax sales were held in Oakland county between the years 1932 and 1938. At the so-called "scaven-

ger sale" of property for delinquent taxes under PA 1937, No 155, as amended (CL 1948, § 211.351 *et seq.* [Stat Ann § 7.951 *et seq.*]), much property in the township and assessment districts was sold for delinquent taxes by the State. Upon such sale all remaining delinquent taxes (including special assessment) against the lands so sold were cancelled.

Other facts connected with the history of the 35 special assessment districts are recited in 5 cases in this Court, hereinafter cited.

For the purpose of this decision, lands, the title to which was forfeited to the State because of unpaid taxes, are herein referred to as scavengered and lands that are under discussion in this case, the title to which was not so forfeited to the State, are called unscavengered.

The scavengered lands are, because of the scavenger sale proceedings, exempt from any special assessment or reassessment for unpaid balances to be reassessed against the several assessment districts that are spoken of in this proceeding. *Municipal Investors Association* v. *City of Birmingham,* 298 Mich 314; *Keefe* v. *Oakland County Drain Commissioner,* 306 Mich 503, 510–512.

The township of Royal Oak has a secondary liability as guarantor for payment of all the bonds. *Hazel Park Nonpartisan Taxpayers Association* v. *Township of Royal Oak,* 317 Mich 607, 625.

The township has the authority and duty to levy reassessment against the remaining (unscavengered) lands in such special assessment districts situate within the present territorial limits of the township, in a manner not inconsistent, however, with our recent holding in *Wood* v. *Village of Rockwood, ante,* 507.

The township has now no authority to levy or direct the levying of reassessments on any lands not now within the territorial limits of the township.

The township and plaintiff cities have an interest in seeing to it that all the "seceded" territory contributes its just proportionate share toward the payment of the debt.

The plaintiff cities of Pleasant Ridge and Huntington Woods contain within their territorial limits no lands embraced in any of the 35 original assessment districts. Each of said 2 plaintiff cities is liable at large for the payment out of its general fund to the township for its proportion of the remaining unpaid debt after remedies of reassessment have been exhausted.

Plaintiff cities Pleasant Ridge and Huntington Woods must make their proportionate contribution without recourse to any special assessment district for the reason that there are no lands of the original special assessment district located within their territorial limits. The defendant cities of Royal Oak, Ferndale and Hazel Park having within their territorial limits lands embraced within some of the original 35 assessment districts, have a right and duty to make proportionate reassessment on the remaining (unscavengered) lands within their territorial limits and within such original assessment district or districts also in a manner consistent with our holding in *Wood* v. *Village of Rockwood, ante,* 507.

The defendants have omitted to take steps that it was their imperative duty to take and are subject to an order of mandamus to require them to proceed.

Defendant township cites CL 1948, § 41.413 (Stat Ann 1949 Rev § 5.2413), hereinafter quoted, and claims that the last sentence thereof speaking of reassessment did not impose any statutory duty upon the township or cities to make a reassessment. However, in *Hazel Park Nonpartisan Taxpayers Association* v. *Township of Royal Oak,* 317 Mich 607, at page 630, referring to CL 1948, § 68.12 *et seq.* (Stat Ann § 5.1360 *et seq.*), where the words are, "The

council may, within the limitations prescribed for such assessments, make an additional pro rata assessment to supply the deficiency," we held the provision to be mandatory although the word used is "may." The word "may" was substituted for the word "shall" in the above statute by PA 1934 (1st Ex Sess), No 24, subsequent to the creation of the special assessment districts and subsequent to the special assessment bond issues. In *Wood* v. *Village of Rockwood,* 311 Mich 381, we say at page 389, "While permissive in form, the requirement to reassess has been construed by this Court to be mandatory." The township board is to be considered as required under the circumstances of the instant case to make the reassessments.

Counsel for the township say that the right of the township to assert any claim against the assessment districts is barred by statute and by the township's laches, but in the *Hazel Park Case, supra,* we say, 630, 631:

"A failure to reassess does not terminate the liability of the cross-defendant cities to share proportionately in making up the deficiencies."

Counsel for defendant township stress their contention that CL 1948, § 41.413 (Stat Ann 1949 Rev § 5.2413) does not command the township to levy a reassessment and does not prescribe the steps to be taken by township officers in the performance of that duty, and further argue that it cannot be said that the act contemplated a reassessment by a seceded city because according to both the title and body of the act, the act is limited in its application to a township or township board. See, however, *Wood* v. *Village of Rockwood,* 311 Mich 381 (*infra*).

Some of the defendants complain that a requirement by the court that the proceeding be at once instituted to make reassessments would amount to

so great a hardship to the taxpayers involved that the excessive burden would defeat the purpose of the assessment by reason of nonpayments. No evidence is pointed out that any such situation is likely to occur.

Defendant township asserts that because CL 1948, § 41.413 (Stat Ann 1949 Rev § 5.2413) prescribes a duty that the township shall pay the defaulted bonds and then the municipalities shall proceed to make reassessments, that this amounts to a bar to a procedure for the muncipalities first to be compelled to make the reassessments and precludes the mandate of the court now to make the reassessments.

The inability of the township to make full advancement on its secondary liability is no bar to proceedings to obtain all possible payments by reassessment against lands properly subject thereto. Nor is the necessity for making reassessments any excuse for the plaintiffs and defendants not proceeding to make such payments now from their respective general funds as with reasonable certainty the township and municipalities which are parties to this case are required to pay because of their secondary liability for such deficiencies as remain after remedies of reassessment have been exhausted.

The proceedings for improvements to platted lands are by CL 1948, § 41.413 (Stat Ann 1949 Rev § 5.2413) expressly made conformable to procedure in the village improvements statute.

The unpaid bonds represent a debt that is still not outlawed and is primarily chargeable against the lands lying within the original limits of the several assessment districts, excepting as to scavengered lands, and excepting as otherwise held in *Wood* v. *Village of Rockwood, ante,* 507.

In the dispute as to reassessment we note a case recently decided by us and referred to in the briefs of the parties, *City of Berkley* v. *Township of Royal*

*Oak,* 320 Mich 597, in which we denied mandamus brought to require reassessment. However, the proceedings in that case were governed by a statute as to road repairs and fire protection districts in a township and had nothing to do with platted areas nor villages.

The instant case has to do with platted lands. Improvements and procedure in respect to improvements and taxation therefor in platted lands in townships and villages are provided for in PA 1883, No 38, as amended and added to (CL 1948, § 123.1 *et seq.* [Stat Ann 1949 Rev § 5.2221 *et seq.*]) and also governing some of the phases of the same subjects is PA 1923, No 116, as amended (CL 1948, § 41.411 *et seq.* [Stat Ann 1949 Rev § 5.2411 *et seq.*]). Of particular interest is CL 1948, § 41.413 (Stat Ann 1949 Rev § 5.2413), which section (hereinbefore referred to) in part reads as follows:

"All proceedings relating to the making, levying and collection of special assessments herein authorized and issuing bonds in anticipation of the collection thereof, shall conform, as near as may be, to the proceedings for levying special assessments and issuing special assessment bonds by villages, for like improvements, as set forth in Act No 3 of the Public Acts of Michigan for 1895, as amended, being chapter 72 of the Compiled Laws of Michigan for 1915, as amended. If any such special assessment fund is insufficient to pay such bonds and interest thereon when due and said bonds shall have been issued subsequent to the twenty-first day of April, 1927, the township board may advance the amount necessary to pay such bonds, and shall be reimbursed from such assessments when collected, or by reassessment of the deficiency if necessary."

After the lapse of 22 years and more with much of the original assessments still unpaid, it must be said reassessment is necessary.

From an examination of the statutes that deal with the authority of townships to make improvements as to platted lands and the decisions which we have heretofore made, we conclude that the unpaid balance of bonds issued for the improvements in the 35 assessment districts herein mentioned is a debt for which the lands in the several assessment districts are primarily liable (excluding scavengered lands and except as relates to those situations in which application of our holding in *Wood* v. *Village of Rockwood, ante,* 507, leads to a contrary result) with the township at large secondarily liable therefor and thereon, for the deficiency, which secondary liability of the township of Royal Oak is shared with the township proportionately by the several seceding municipalities. See *Hazel Park Nonpartisan Taxpayers Association* v. *Township of Royal Oak, supra.*

We do not have before us for decision in this case the determination of the precise amount of the total bonded indebtedness which, however, seems not to be disputed. We further do not have before us for determination the precise amount to be borne by each of the several seceding municipalities and while some question is made about the possibility of defendant municipalities proceeding to meet their obligation without further instruction as to the amount and without a certified roll, we do not deem either of those matters to be an insuperable obstacle in the way of the defendant municipalities proceeding with the reassessments. The amounts, if controverted, are justiciable. We must assume that the original rolls are available for examination and copying.

Question is made about the authority of the defendant municipalities to reassess for the purposes of the 35 districts. It follows from what we have heretofore said that it is the duty of Royal Oak township to proceed to make reassessment against

such portions of the original assessment districts as still lie within the territorial limits of the township of Royal Oak that are liable under *Wood* v. *Village of Rockwood, ante,* 507. As to the other defendants, we have examined their charter provisions as set forth in the record and find them sufficient to authorize the several city councils to proceed with the reassessment.

Section 13.12 of chapter 6 of the charter of the city of Hazel Park contains the words,

"Should the assessments in *any* special assessment roll prove insufficient for *any* reason, including the noncollection thereof, to pay for the improvement for which they were made or to pay the principal and interest on the bonds issued in anticipation of the collection of such assessments, then the council shall make additional pro rata assessments to supply the deficiency." (Italics supplied.)

This language is surely as broad as the language of the village charter of Rockwood in the *Wood Case,* heretofore cited, 311 Mich 381.

Section 17 of chapter 12 of the charter of the city of Ferndale contains an even broader power of reassessment and the same may be said for section 17 of chapter 12 of the charter of the city of Royal Oak.

On the subject of laches, it is worth while noting the 5 decisions hereinbefore referred to, namely, *Whitman* v. *Township of Royal Oak,* 269 Mich 146; *Township of Royal Oak* v. *City of Pleasant Ridge,* 295 Mich 284; *Township of Royal Oak* v. *City of Pleasant Ridge,* 307 Mich 714; *Township of Royal Oak* v. *City of Huntington Woods,* 313 Mich 137; *Hazel Park Nonpartisan Taxpayers Association* v. *Township of Royal Oak,* 317 Mich 607. All those 5 cases in this Court by appeal referred to the special assessments debt evidenced by the bonds involved in this case. An examination of all these decisions will

disclose that the validity, liability and procedure concerning the debt evidenced by the bonds in question in this case constituted a maze of uncertainty and doubt and it would be a misapplication of the principle of laches to say that the right or duty of any of the municipalities involved in this litigation has been lost by inaction or delay. The rights of the parties were in great doubt, complexity and uncertainty. The statute of limitations* had not run against the matters complained of in plaintiffs' petition when the petition was filed. The statute of limitations had not run to bar the proceeding herein instituted nor is laches to be attributed to the plaintiffs.

It is to be assumed that as the original assessments were all payable in 5-year instalments, that if the assessing authorities shall be confronted with a barrier of statutory or constitutional limitation presently limiting the amount of taxes that can be assessed† against lands subject to reassessment, that the reassessment may be spread over a period of years not exceeding 5 years so as to overcome the barrier, if any, of the limitation.

It is also the duty of each of defendant municipalities to proceed to pay from its general funds its proportionate share of the bonded indebtedness at least to within a reasonable estimate of ultimate liability as speedily as it may fairly so do in view of its resources in the nature of annual tax receipts and the strict necessities of each municipality in carrying on its government and that without waiting for the collection of the special assessments herein directed.

For a determination of the proportionate amounts which each city (with the township) shall have the

---

* See CL 1948, § 609.13 (Stat Ann 1949 Cum Supp § 27.605).— REPORTER.

† See Const 1908, art 10, § 21, as amended in 1948.—REPORTER.

burden of paying, and preparation of the reassessment, access can be had to the original assessment rolls, without waiting for the township to furnish a copy thereof.

The writ prayed for will issue if found necessary. No costs, a public question being involved.

BOYLES, C. J., and NORTH, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.